UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**OLD NAVY, LLC,**

                 Plaintiff,

    v.

**CENTER DEVELOPMENTS OREG.,
LLC,**

               Defendant.

Civil Case No. 3:11-472-KI

OPINION AND ORDER


Robert C. Weaver, Jr.
Adam R. Kelly
Garvey Schubert Barer
Eleventh Floor
121 S.W. Morrison Street
Portland, OR 97204-3141

      Attorneys for Plaintiff


Page 1 - OPINION AND ORDER

Dwain M. Clifford
Ball Janik LLP
101 SW Main St., Ste. 1100
Portland, OR 97204-3219

     Attorney for Defendant

KING, Judge:

     Plaintiff Old Navy brings a claim for breach of contract and seeks a declaratory judgment

and attorney's fees arising out of a dispute over language in a lease agreement ("Lease") between

itself and defendant landlord Center Development's Oreg., LLC ("CDO"). Pending before me

are cross-motions for summary judgment. For the following reasons, I grant Old Navy's motion

and deny CDO's motion.

## BACKGROUND

     Old Navy claims that when "Key Store" GI Joe's closed in Cedar Hills Crossing (the

"Mall"), where an Old Navy store is located, the closure constituted a "Co-Tenancy Failure"

triggering Old Navy's right to pay a lower "Alternate Rent" rate. It also alleges CDO's failure to

inform Old Navy that the Key Store had closed, and to seek Old Navy's approval of New

Seasons as a substitute Key Store, constituted a breach of the Lease. Indeed, Old Navy alleges

that New Seasons, the substitute retailer CDO found to fill the available space, was not an

adequate substitute Key Store under the language of the Lease. Old Navy seeks return of

overpaid rent in the amount of $572,480.72, as well as attorney's fees.

     CDO asserts the following affirmative defenses and counterclaims: that Old Navy

waived any right to declare a Co-Tenancy Failure or to pay Alternate Rent; that Old Navy is

estopped from declaring a Co-Tenancy failure or electing to pay Alternate Rent; and that the

Page 2 - OPINION AND ORDER

Alternate Rent remedy is an unenforceable penalty.  It also seeks a declaratory judgment that Old Navy was required to accept New Seasons and/or Powell's Books as a substitute Key Store, pursuant to the Lease and the duty of good faith and fair dealing, and that there is no Co-Tenancy Failure.

In February 2001, Old Navy's and CDO's predecessors entered into the commercial lease at issue here for retail space at the Mall.  Article 13.3 of the Lease[1] requires that "Best Buy and two of the Additional Key Stores" be open for business.  The Lease identifies Emporium, GI Joe's, and Ross as "Additional Key Stores."  Failure of a "Key Store" to be open as required "shall be deemed a failure of the Operating Requirements and may sometimes be referred to as a 'Co-Tenancy Failure.'  Landlord shall immediately notify Tenant of any Co-Tenancy Failure." Art. 13.3(B).  All notices (other than invoices) are directed to be sent to a specified address in California at "Attn:  Real Estate Law."  Art. 27.6(a).

The Lease allows CDO to substitute a Key Store with an appropriate replacement.  The provision reads:

> If Landlord desires to substitute a retailer for one of the Key Stores . . . Landlord shall submit the name of such substitute retailer to Tenant for its **prior written approval**.  The approval of Tenant shall not be unreasonably withheld, delayed or conditioned if:  (1) **the use to be conducted by such substitute retailer is substantially the same** as that conducted by the Key Store it is intended to replace; (2) the **merchandise** sold by such substitute retailer is of **equal or better quality, and is offered at similar price points** as the Key Store it is intended to replace; (3) such substitute retailer will operate a retail business from substantially all of the premises being vacated by the Key Store it is intended to replace; and

---

[1]The Lease is attached as Exhibit 1 to the Complaint, as Exhibit 1 to the Nobach Declaration in Support of CDO's Motion for Summary Judgment, and as Exhibit 1 to the Nobach Declaration in Support of CDO's Response to Old Navy's Motion for Summary Judgment.

(4) the net worth of the substitute retailer is equal to or greater than the net worth of the then vacating Key Store measured as of one (1) year prior to such Key Store vacating the premises.

**Notwithstanding the above**, any retailer shall be approved by Tenant if such retailer is a retailer listed on **Exhibit E**, that operates its business in all or substantially all of the space being vacated by a vacating Key Store.

Art. 13.5(A) (emphasis added).  CDO points out that Exhibit E to the Lease contains a wide range of retailers, such as Barnes & Noble, Border's Books, J.C. Penney, K-Mart, Office Depot, Staples, Petco and Petsmart, Sears, Target and Wal-Mart.  The latter two retail stores sell groceries, among many other items.

Further, if the "Operating Requirements are not being met[,]" then Old Navy shall, "effective immediately," have the right to pay an "Alternate Rent," as follows:

(2) Alternate Rent Remedy.  Tenant may remain open for business and pay monthly, as "Alternate Rent" during the period that the Operating Requirements are not being met, in lieu of Minimum Rent, Percentage Rent and Other Charges, an amount equal to the lesser of:  (a) two percent (2%) of all Gross Sales made in the Premises for each month (or portion thereof) during such period, or (b) the amount of Minimum Rent then applicable. . . .

Art. 13.4(A).  Alternatively, the "Right to Close Remedy" allows Old Navy to close its doors, but continue paying rent, until it decides to reopen.  Finally, the "Termination Remedy" allows Old Navy to forever terminate the Lease if the "Operating Requirements" are not met for more than nine months.  Art. 13.4(A)-(C).

Around 2003, Key Store Emporium closed.  On August 16, 2005, Key Store Ross moved to the Emporium location.  On or around November 17, 2006, Powell's Books opened a store; Powell's is not a pre-approved substitute for a Key Store and it does not operate in substantially all of the retail space previously occupied by a Key Store.  Additionally, sometime in 2006, New

Seasons opened in the space Ross had vacated; it is also not a pre-approved substitute Key Store. CDO did not request Old Navy's approval of New Seasons as a substitute Key Store at that time.

The Lease provisions, requiring Best Buy and two additional Key Stores, were being met until May 30, 2009 when GI Joe's closed. CDO believed the previously opened New Seasons met the substitute Key Store conditions. Sports Authority, listed as a pre-approved substitute on Exhibit E, opened in the former GI Joe's location, but not until May 6, 2011. Accordingly, between May 30, 2009 and May 5, 2011, a "Co-Tenancy Failure" occurred unless New Seasons was an appropriate substitute Key Store.[2]

Old Navy discovered GI Joe's closure on September 30, 2010 as part of a routine audit of its leases performed by its Landlord Audit department. It alerted CDO that it was entitled to pay Alternate Rent during the time GI Joe's was closed and until a substitute Key Store opened in the Mall, and it demanded a refund of excess rent paid since May 30, 2009. In November 23, 2010 CDO offered New Seasons as a substitute Key Store, but Old Navy rejected it because New Seasons did not meet the requirements of Article 13.5. Old Navy does not view New Seasons as an appropriate substitute Key Store because it is a grocery store, and not a juvenile clothing store like Ross. CDO reports it never considered that Old Navy would not accept New Seasons as a valid substitute for the space Ross had vacated.

In November 2010, Old Navy paid the Alternate Rent it believed it was entitled to pay, but CDO declared Old Navy in default of the lease. Old Navy thereafter paid full monthly rent under protest.

---

[2]Although CDO initially asserted in its answer that Powell's Books was an appropriate substitute, it has since conceded it was not.

The Landlord Audit department at Gap, Inc., Old Navy's parent company, is charged with monitoring landlord compliance with Leases. No other employee or department is responsible for monitoring or ensuring compliance with Leases. Ravel Decl. ¶ 4.

Old Navy paid $24,548.22 per month in rent. The Alternate Rent was about a third or less of the usual monthly rent. CDO notes that Old Navy renewed its lease–for another five years–in November 2010, while the GI Joe's space was still empty.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.    Objections to Evidence

In support of its own motion for summary judgment, and in response to Old Navy's motion, CDO relies on evidence and testimony propounded by Robert LeFeber. Old Navy objects to many of the statements LeFeber makes, arguing they are irrelevant to a dispute that is

predominately a legal one. Since I find the Lease provisions to be clear and unambiguous, I do not rely on any evidence or testimony of LeFeber.

Additionally, Old Navy objects to several of CDO's factual assertions. Again, I agree that reports about renovations, the desirability of a tenant like New Seasons, or reasons Key Stores closed have no bearing on the legal questions facing me.

Finally, Old Navy objects to Stephen Nobach's declaration filed in support of CDO's response to Old's Navy's motion for summary judgment as inadmissible parole evidence. Again, since I find the Lease provisions to be clear and unambiguous, I do not refer to this declaration.

Old Navy's counsel did not confer with CDO before filing Old Navy's objections, and did not include a statement in the first paragraph of his brief certifying his good faith efforts to resolve the dispute, as required by LR 56-1(b), LR 7-1(a). In the interest of deciding these motions quickly, and recognizing that the rules were recently amended to clarify a conferral requirement in the context of evidentiary objections, I forgive Old Navy's noncompliance with the rule. Old Navy's counsel also reports that he discussed the objections with CDO's counsel after he learned of the conferral requirement.

CDO, in turn, filed objections to the declarations of David Matthews and Jason Rosenzweig filed in support of Old Navy's opposition to CDO's motion for summary judgment. CDO asserts the declarations contain untimely expert testimony. Both declarations respond to an argument CDO makes that I need not address. As a result, the objections are denied as moot.

II.    Old Navy's Motion for Summary Judgment on its Own Claims

Old Navy argues that when Key Store GI Joe's closed in the Mall, the closure constituted a "Co-Tenancy Failure" triggering Old Navy's right to pay a lower "Alternate Rent" rate. It also

alleges CDO failed to inform Old Navy that the key stores had closed, constituting a breach of the contract.

A.      Whether there was a Co-Tenancy Failure from May 30, 2009 through
        May 5, 2011

Old Navy argues that the unambiguous provisions of the Lease required that Best Buy and at least two Additional Key Stores be open for business in order to make Old Navy responsible for payment of the full rent. Old Navy argues it is "undisputed that, as of May 30, 2009 and continuing until the opening of Sports Authority on May 6, 2011, the only Key Stores open for business at the Mall were Best Buy and Ross." Old Navy's Mem. in Supp. of Summ. J. 15. As a result, there was a Co-Tenancy Failure triggering its right to pay Alternate Rent.

CDO jumps straight to the language of the Lease directing the process for approving substitute Key Stores. The question it poses is whether New Seasons, which filled the space Ross left, should be considered a Key Store, thereby curing any Co-Tenancy Failure. CDO argues there is a genuine issue of fact about whether New Seasons meets the conditions to be considered a substitute Key Store.

The provision central to evaluating whether a retailer is an appropriate substitute Key Store reads in part as follows,

> The approval of Tenant shall not be unreasonably withheld, delayed or conditioned if: (1) **the use to be conducted by such substitute retailer is substantially the same** as that conducted by the Key Store it is intended to replace; (2) the merchandise sold by such substitute retailer is of equal or better quality, and is offered at similar price points as the Key Store it is intended to replace; [and two conditions that no one disputes are met].

Art. 13.5(A).

Under Oregon law, the interpretation of a contract is a question of law for the court. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992).[3] The court's goal is to give effect to the intention of the contracting parties. Anderson v. Jensen Racing, Inc., 324 Or. 570, 575-76, 931 P.2d 763 (1997); ORS 42.240 (in the construction of a written instrument the intention of the parties is to be pursued if possible).

A contract or term is unambiguous if it has only one sensible and reasonable interpretation. D&D Co. v. Kaufman, 139 Or. App. 459, 462, 912 P.2d 411 (1996). For a contract or term to be legally ambiguous, it must be susceptible to at least two plausible interpretations when examined in the context of the contract as a whole. Moon v. Moon, 140 Or. App. 402, 407, 914 P.2d 1133 (1996). In the event of an ambiguity, the Court may consider extrinsic evidence of intent. Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997).

CDO implies that the language "substantially the same" "use" is ambiguous. It does so without offering a plausible interpretation contrary to Old Navy's from which I could then make a finding of ambiguity. Rather, it suggests that: (1) the list of stores on Exhibit E inform the meaning of Article 13.5(A); (2) the provision simply requires that the use of space be retail and comparable in size and scope; and (3) Old Navy's interpretation ignores the purpose of the provision.

CDO first asks that I read Exhibit E in conjunction with Article 13.5(A), suggesting that because Exhibit E contains a variety of stores Old Navy pre-approved as substitute Key Stores–including a variety of book stores, pet stores, and stores carrying groceries and other items–the conditions articulated at Article 13.5(A) should be read with leniency to include a store

---

[3]The Lease makes Oregon law the governing law. Art. 27.10.

like New Seasons. I disagree with CDO's interpretation. The Lease identifies two ways a retailer may qualify as a substitute Key Store; either the substitute retailer meets the narrow and clear criteria set forth in Article 13.5(A) or the substitute retailer is listed on Exhibit E. Simply because Old Navy pre-approved Target, a store CDO asserts sells groceries, among other items, does not mean Old Navy is required to accept a grocery store for the space Ross vacated. Instead, under the language of the Lease, Old Navy is entitled to notice and the right to evaluate whether a new tenant is an appropriate substitute under the criteria set forth in Article 13.5(A). Indeed, Exhibit E is introduced by the words "Notwithstanding the above . . ." making it apparent that the stores identified in Exhibit E do not necessarily meet the narrow criteria set forth in Article 13.5(A).[4]

I also reject CDO's argument that New Seasons' "use" of space is "substantially the same" as Ross's use of the space simply because New Seasons is using the space for retail use. The language of Article 13.5(A) calls for a tenant to be a "retailer," making "substantially the same" "use" of the space mean something more than that it be a retail use. As a result, I find unpersuasive CDO's argument that a reasonable juror could find New Seasons' use to be similar enough to satisfy the requirements of the Lease.

CDO finally suggests that Old Navy's interpretation ignores the purpose of the clause and the intention of the parties–to protect Old Navy from lost business, not to give it a windfall. However, the Lease provisions are intended to give Old Navy the opportunity to evaluate a new tenant to confirm that it is an acceptable substitute retailer. In this case, New Seasons is a

_____

[4] The fact that Circuit City became an online-only retailer *after* the parties entered the Lease does not inform the meaning of the substitute Key Store provision.

grocery store and Ross is a discount, junior department store selling apparel, accessories, and shoes. As a result, New Seasons is neither engaged in substantially the same use of the space as Ross was, nor is it selling a similar type of merchandise that can be compared by quality and price point. Nothing in the language of the provision directs an interpretation requiring Old Navy to accept a retailer simply because it brings in traffic. Instead, the provision identifies specific conditions that are not met by New Seasons.

Since I find that New Seasons was not an appropriate substitute retailer, Old Navy is entitled to summary judgment on its claim that CDO engaged in a Co-Tenancy Failure. Its remedy under the Lease is the right to pay Alternate Rent. Accordingly, it is entitled to reimbursement of excess rent in the amount of $572,480.72, plus interest.

B.    Use of Alternate Rent Remedy

CDO suggests that Old Navy is improperly reading the Alternate Rent Remedy. The language allows Old Navy, to pay "Alternate Rent" "effective immediately" if the "Operating Requirements are not being met[.]" Art. 13.4(A)(2). CDO argues that the "effective immediately" language means Old Navy may pay reduced rent going forward from the date it made the decision to elect to pay Alternate Rent, but it does not permit Old Navy to retroactively demand Alternate Rent. CDO contends Old Navy knew about GI Joe's closure, was sitting on its hands and allowing CDO to collect excess rent, and is just now demanding a windfall.

CDO has not produced evidence demonstrating anyone responsible for this Lease knew about GI Joe's closure and its effect on the Operating Requirements of the Lease before Old Navy's Landlord Audit department itself undertook an audit of the Operating Requirements at the Mall. CDO points to two documents, an internal report from 2009 noting the "[r]ecent

Page 11 - OPINION AND ORDER

vacancy by GI Joes" and a 2009 letter about property-tax paying tenants. Clifford Decl. in Supp.

of CDO's Resp. to Old Navy's Mot. for Summ. J. Exs. 112 (filed under seal) and 111. With

respect to the internal report, it is true Old Navy's Real Estate Manager admitted that the internal

report would have been available to Old Navy's finance, real estate, and store design groups in its

discussion of specific locations, including the Mall, as part of its market-planning meetings. Id.

at Ex. 125, Rosenzweig Tr. 66:15-19 (filed under seal). However, CDO cannot identify who

made the comment in the internal report, what the scope of the person's duties were, whether

anyone who reviewed the report was aware of the Operating Requirements, or whether anyone

even discussed the report or the Operating Requirements at any of those group meetings. Instead,

the only evidence is that the Landlord Audit department had never seen the report and did not

have access to it or reports of its kind. Supp. Kelly Decl. Ex. 5, Ravel Dep. 68:2-69:6, 70:15-25

(filed under seal).

     The tax payments letter is even less persuasive. It was not sent to the Real Estate Law

department in CA. The letter simply lists tenants which paid taxes, omitting GI Joe's when the

previous year's letter had listed the company, and it does not say GI Joe's is no longer operating.

Further, no one received the letter in the Landlord Audit department. Id. at Ex. 4, Ravel Dep.

62:4-63:7.

     Without the right department getting word of the store closures, Old Navy could not

evaluate the meaning of a store's closure in reference to the Lease's terms. Old Navy had no way

of knowing that a Co-Tenancy Failure existed without notice from CDO, and Old Navy relied on

the express contractual term requiring CDO to provide that notice.

Page 12 - OPINION AND ORDER

Since Old Navy did not know about GI Joe's closure and its effect on the Operating Requirements under the Lease, Old Navy's remedies are not limited by language in the Lease entitling it to Alternate Rent "effective immediately." As soon as it learned of the Co-Tenancy Failure, Old Navy alerted CDO of its right to pay Alternate Rent.

C.    Whether CDO Breached the Lease by Failing to Notify Old Navy of the Co-Tenancy Failure

The Lease clearly requires CDO to "immediately" and "promptly" notify Old Navy of a Co-Tenancy Failure. Art. 13.3(B). Article 27.6(A) requires that notice of this nature be delivered in writing to its legal notice address, care of Gap Inc.'s Real Estate Law department and that "no notice to [Old Navy] shall be effective unless it is addressed to the attention of Real Estate Law . . . ."

CDO admits it did not provide written notice to Old Navy pursuant to this provision. Kelly Decl. in Supp. of Old Navy's Mot. for Summ. J. Ex. 7 (CDO's Resp. to Old Navy's First Set of Requests for Admission). CDO also admits that Old Navy is "correct" that CDO did not ask for Old Navy's permission to substitute New Seasons as a Key Store, despite the fact that the Lease requires CDO to obtain Old Navy's approval. CDO's Resp. to Old Navy's Mot. for Summ. J. 16. Nevertheless, it argues that because New Seasons was an acceptable substitute, its failure to alert Old Navy of GI Joe's closure was not a material breach. I have already rejected CDO's argument that New Seasons was an acceptable substitute.

CDO resorts to a good faith and fair dealing argument as a way to defend its own failure to give notice. I have separately dealt with that argument in reference to CDO's counterclaims below. CDO fails to raise a genuine issue of fact suggesting Old Navy's Real Estate department

received notice of GI Joe's closure. As a result, Old Navy is entitled to summary judgment on its breach of contract claim.

   D. Attorney's Fees and Costs

   Old Navy seeks summary judgment on its claim for attorney's fees. The prevailing party is entitled to "costs of suit and reasonable attorney's fees" in any action brought to enforce or interpret the Lease. Art. 27.11. Old Navy is entitled to attorney's fees as the prevailing party.

II. Old Navy's Motion for Summary Judgment on CDO's Counterclaims

   A. Whether New Seasons and Powell's Books are Valid Substitute Key Stores

   Old Navy moves for summary judgment on this counterclaim. CDO responds that New Seasons was a valid substitute Key Store; it no longer argues that Powell's Books was an appropriate substitute Key Store.

   Since I have found in Old Navy's favor that Old Navy could properly reject New Seasons as a substitute Key Store under the language of the Lease, I dismiss the counterclaim with prejudice.

   B. Whether Sports Authority is a Valid Substitute Key Store

   Old Navy agrees that Sports Authority is a valid substitute Key Store that replaced GI Joe's and cured the Co-Tenancy Failure as of May 6, 2011. This counterclaim is dismissed as moot.

   C. Whether Old Navy Breached its Obligations to Accept New Seasons and/or Powell's

   CDO counterclaims for a declaration that Old Navy breached its obligations under the Lease and under its duty of good faith and fair dealing in refusing to accept New Seasons and/or

Powell's as substitute Key Stores. CDO has abandoned its argument that Powell's was an

appropriate substitute Key Store. Accordingly, I evaluate only CDO's assertion that, by

rejecting New Seasons as a substitute Key Store, Old Navy did not exercise in good faith its

rights under the Lease.

CDO asserts that Old Navy was obligated under the Lease language and the duty of good

faith and fair dealing to accept New Seasons. "A contract that necessitates the exercise of

discretion certainly implicates the duty of good faith." McKenzie v. Pac. Health & Life Ins. Co.,

118 Or. App. 377, 847 P.2d 879 (1993). Here, CDO points out, the Lease directs that Old

Navy's "approval . . . shall not be unreasonably withheld, delayed, or conditioned" if the

substitute retailer satisfies the Key Store requirements. Art. 13.5(A). CDO compares this

situation to Chiles v. Robertson, in which the court was faced with lease assignments. The court

found that where an assignment clause contained a reasonableness condition, the lessor could not

deny its consent when the lessor's risks were not significantly increased "and there was therefore

no financial basis for it to refuse consent." 94 Or. App. 604, 646-47, 767 P.2d 903 (1989),

modified on recons. on other grounds, 96 Or. App. 658, 774 P.2d 500 (1989). CDO contends

that New Seasons brings far more potential customers to the Mall than did the Emporium, for

example.

The duty of good faith and fair dealing "is to be applied in a manner that will effectuate

the reasonable contractual expectations of the parties. But it is only the *objectively* reasonable

expectations of the parties that will be examined in determining whether the obligation of good

faith has been met." Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp., 320 Or. 638, 645, 891

Page 15 - OPINION AND ORDER

P.2d 639 (1995) (internal citations and quotations omitted).  Indeed, the duty cannot "vary the substantive terms of the bargain[.]"  Id.

Requiring Old Navy to accept New Seasons as a replacement for Ross, where the "use to be conducted" by New Seasons is not "substantially the same as that conducted" by Ross, and where the "merchandise sold by" New Seasons is not of "equal or better quality, and . . . offered at similar price points" as Ross, would "vary the substantive terms" of the Lease.  The case CDO relies on is not persuasive where the right to assign was not conditioned on any criteria such as specifically set out in the Lease here.  Chiles, 94 Or. App. at 629 (some leases at issue contained provisions like "Lessor shall not unreasonably withhold its consent to any assignment to any responsible or reputable person, firm or organization").

Old Navy was within its contractual rights to withhold its approval of New Seasons as a substitute Key Store.  As a result, CDO's counterclaim is dismissed with prejudice.

D.       Whether Old Navy Waived its Rights or is Estopped

CDO alleges in its counterclaim that Old Navy waived its rights under Article 13 of the Lease, and is estopped from declaring a Co-Tenancy Failure.

Again, Old Navy is entitled to summary judgment on these counterclaims because CDO has failed to raise a genuine issue of material fact suggesting Old Navy knew about GI Joe's closure, and the effect of that closure on the Operating Requirements of the Lease at the Mall, prior to its 2010 audit.  Specifically, with respect to waiver, Old Navy did not intentionally relinquish a known right because CDO never notified Old Navy of GI Joe's closure and the need to evaluate New Seasons as a substitute Key Store.  See Wright Schuchart Harbor v. Johnson, 133 Or. App. 680, 685-86, 893 P.2d 560 (1995) (waiver is "intentional and voluntary

Page 16 - OPINION AND ORDER

commitment to forgo some right"). As a result, Old Navy's inaction cannot constitute unequivocal relinquishment of its right to Alternate Rent.

CDO also fails to make out the elements of its estoppel counterclaim. The elements of estoppel are: (1) Old Navy made a false representation; (2) it made the statement with knowledge of the facts; (3) CDO was ignorant of the truth; (4) Old Navy made the statement with the intention that the statement should be acted upon by CDO; and (5) CDO was induced to act upon the statement. Herman v. Valley Ins. Co., 145 Or. App. 124, 133-34, 928 P.2d 985 (1996). There must be justifiable and reasonable reliance by the party seeking to invoke estoppel. Id. at 134.

CDO's estoppel theory is grounded on its contention that a material issue of fact exists about when Old Navy learned of GI Joe's closure. I have already concluded that it has failed to meet its burden on the notice issue. CDO concedes it never notified the Real Estate Law department. The evidence CDO points to as indicative of notice does not suggest anyone at Old Navy who was responsible for this Lease knew about GI Joe's closure. As a result, no reasonable juror could conclude that Old Navy knew about the closure, that CDO did not know about the closure and its effect on the Operating Requirements, that Old Navy failed to act in order to induce CDO to refrain from curing the Co-Tenancy Failure, and that CDO reasonably relied on Old Navy's failure to act.

These counterclaims are dismissed with prejudice.

E.    Whether There is a Co-Tenancy Failure

Again, Old Navy moves for summary judgment on CDO's counterclaim that there was no

Co-Tenancy Failure. Since New Seasons was not a substitute Key Store, this counterclaim is dismissed with prejudice.

      F.     Whether Old Navy has not Paid, and CDO has not Accepted, "Excess" Rent

This counterclaim is based on whether a Co-Tenancy Failure existed and whether Old Navy is entitled to a reimbursement of the excess rent it paid pursuant to the Alternate Rent Remedy in the Lease. Since I have found a Co-Tenancy Failure existed and that Old Navy is entitled to reimbursement of its excess rent, this counterclaim is dismissed with prejudice.

      G.     Attorney's Fees and Costs

The prevailing party is entitled to "costs of suit and reasonable attorney's fees" in any action brought to enforce or interpret the Lease. Art. 27.11. Since I have found in Old Navy's favor, it is the "prevailing party" and this counterclaim is dismissed with prejudice.

**II.**    CDO's Motion for Summary Judgment on its Counterclaim that the Alternate
        Rent Remedy is Unenforceable

CDO moves for summary judgment on its counterclaim that the Alternate Rent Remedy is an unenforceable liquidated damages provision. This is a legal determination that is appropriate for summary judgment. Kesterson v. Juhl, 157 Or. App. 544, 548, 970 P.2d 681 (1998). Courts undertake a two-step inquiry in evaluating whether a provision awards unenforceable liquidated damages. The court first determines whether the disputed clause actually is a liquidated damages clause, defined as "words of a contract that set the amount of damages to be recovered by one party from another in case of the latter's failure to perform as agreed." Id.

Next, the court determines if it is an unlawful penalty by considering the factors in

ORS 72.7180(1):

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

A liquidated damages clause is not a clause that requires payment "when a contract term

has been satisfied." Kesterson, 157 Or. App. at 548. In other words, a clause that requires

payment as a "consequence of the occurrence of a contract term" does not qualify as a liquidated

damages provision. Id.

CDO, focusing on the Kesterson language, argues that Old Navy is not alleging any

provision of the Lease has been *satisfied*. Instead, CDO reports, Old Navy is arguing CDO

breached the Lease in failing to maintain the "Operating Requirements" of the Lease, causing a

"Co-Tenancy Failure" and entitling Old Navy to "Operating Requirement Remedies." The

Alternate Rent Remedy, one of the Operating Requirement Remedies, provides for the "remedy"

should the Lease be breached.

As an initial matter, Old Navy underscores that its breach of contract claim is *not* based

on the occurrence of the Co-Tenancy Failure. Rather, the breach of contract claim is based on

CDO's failure to *notify* Old Navy of GI Joe's closure and its *refusal to reimburse* Old Navy for

the excess rent.

I conclude that the Alternate Rent Remedy is not a liquidated damages provision. The

Alternate Rent Remedy is only triggered "[i]f the Operating Requirements are not being met."

Art. 13.4(A)(2). A close reading of the "Operating Requirements" reveals that the provision does

Page 19 - OPINION AND ORDER

not impose any requirements on CDO; rather, it identifies the conditions necessary for CDO to require Old Navy to operate in the Mall.  Specifically, Old Navy "shall not be required to open" its store unless Best Buy and two additional Key Stores are also open for business.  Art. 13.3. CDO suggests that the provision imposes a requirement on the landlord to keep certain tenants at the Mall.  But the Lease does not *require* CDO to keep Key Stores at the Mall, and CDO does not *promise* to keep Key Stores at the Mall.  Indeed, Article 13.5(b) provides that Old Navy's consent to a substitute Key Store is "not intended to restrict the freedom of Landlord to enter into leases or operating agreements with any party with whom Landlord desires in the exercise of its sole and absolute discretion."

If the conditions for operating the Old Navy store at the Mall are not met, Old Navy may choose to close its store and continue paying rent or it may choose to pay Alternate Rent–thus, invoking a tiered rent structure.  In other words, Article 13.4 does not provide for damages if CDO fails to keep certain tenants at the Mall.  If CDO leases to an entity that does not qualify as a Key Store, it is not in breach or default of the Lease and it does not owe Old Navy any damages.  Rather, it must notify Old Navy of the Key Store closure, thereby triggering Old Navy's right to either pay Alternate Rent or close its store and pay Minimum Rent.

It is true that if the Operating Requirements are not met for a period of nine months, Old Navy has the right to terminate the Lease with 30 days' written notice to CDO.  Again, however, this is not a remedy for any breach of CDO's obligations–Old Navy may not terminate the Lease on the spot.

Because I have concluded that the Alternate Rent Remedy is not a liquidated damages provision, but is instead a tiered rent structure, I need not analyze whether the Alternate Rent

Remedy bears any relationship to Old Navy's anticipated or actual damages. CDO's Motion for Summary Judgment is denied on its counterclaim, and Old Navy's motion is granted. Accordingly, CDO's counterclaim on the Alternative Rent Remedy as an unlawful liquidated damages clause is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, I grant Old Navy's Motion for Summary Judgment [23] and deny CDO's Motion for Summary Judgment [27]. Old Navy is awarded judgment in the amount of $572,480.72, plus interest and attorney's fees. CDO's affirmative defenses and counterclaims are dismissed with prejudice.

The parties are directed to confer about the amount of Old Navy's attorney's fees and costs and submit a proposed order within 14 days. If the parties are unable to agree, Old Navy's shall submit a motion for attorney's fees and costs within 14 days and CDO shall file a response within 7 days.

IT IS SO ORDERED.

DATED this _____ day of June, 2012.


_____
Garr M. King
United States District Judge